IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| SHERIN L. EASTERDAY,<br><br>    Plaintiff,<br><br>vs.<br><br>WHIRLPOOL CORPORATION, ET AL.<br><br>    Defendant. | Case No. 19-20 |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendants Whirlpool Corporation ("Whirlpool") and Rick Raue ("Raue") (collectively, "Defendants") request removal of the instant action from the Iowa District Court for Linn County to the United States District Court for the Northern District of Iowa, pursuant to 28 U.S.C. § 1441. In support of their Notice of Removal, Defendants state:

1. On January 15, 2019, Plaintiff Sherin Easterday ("Plaintiff") commenced the above-captioned action by filing a Petition at Law ("Petition") in the Iowa District Court in and for Linn County.

2. Plaintiff's Petition asserts a claim of purported sexual harassment under the Iowa Civil Rights Act ("ICRA").

3. Plaintiff served a summons and a copy of the Petition upon Whirlpool on January 18, 2019 and upon Raue on January 26, 2019. Copies of Defendants' respective Returns of Service are attached hereto as Exhibit A.

4. Under §§ 1441 and 1446, removal is timely if filed within 30 days after a defendant is served with a summons and the initial pleading. Defendants timely file this Notice of Removal within 30 days of service.

5. Undersigned Counsel represents Whirlpool and Raue; both Defendants have properly consented to removal.

6. A copy of the state court file is attached hereto as Exhibit B.

7. A statement containing the information required by Local Rule 81(a) is attached hereto as Exhibit C.

8. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 by reason of complete diversity jurisdiction between the parties.[1]

## Diversity of Citizenship

9. According to Plaintiff's Petition, she is a resident of Linn County, Iowa. Pet. ¶ 1.

10. Whirlpool is incorporated in Delaware. Further, Whirlpool's principal place of business is in Benton Harbor, Michigan where it is headquartered. *See* Pet. ¶ 2 (indicating Whirlpool's "home office" is located in Benton Harbor, Michigan); *see also Hertz v. Friend*, 130 S. Ct. 1181, 1192-93 (2010) (holding that a corporation's principal place of business is generally where its headquarters are located). Because Whirlpool is incorporated under Delaware law and has its principal place of business in Michigan, it is a citizen of these states for diversity purposes.

11. Although Raue resides in Iowa, the right of an out-of-state defendant (such as Whirlpool) to properly remove a matter to federal court "cannot be defeated by fraudulent joinder of a resident defendant." *Cosby v. Illinois Cent. R.R. Co.*, No. 18-CV-2040-LRR, 2018 WL 4521221, at *2 (N.D. Iowa Sept. 21, 2018) (citing *Simpson v. Thomure*, 484 F.3d 1081, 1083 (8th Cir. 2007)).

---

[1] The remaining paragraphs of this Notice of Removal are included pursuant to Local Rule 81(a)(4) to demonstrate satisfaction of the jurisdictional requirements of 28 U.S.C. § 1332.

## Fraudulent Joinder of Defendant Raue

12. A plaintiff fraudulently joins a defendant when "there exists no reasonable basis in fact and law supporting a claim against the resident defendants." *Asplund v. iPCS Wireless, Inc.*, 602 F. Supp. 2d 1005, 1008 (N.D. Iowa 2008) (citing *Wilkinson v. Shackelford*, 478 F.3d 957, 964 (8th Cir. 2007).

13. If a party has been fraudulently joined, the court ignores that party's citizenship in determining whether diversity jurisdiction exists. *Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983).

## The ICRA Does Not Provide a Cause of Action Against "Non-Supervisory" Employees

14. Plaintiff's Petition asserts a claim under the ICRA for purported sexual harassment. Pet. at 7-8 (asserting one claim pursuant to Iowa Code §§ 216.1 *et seq.*).

15. While individuals may be held liable under the ICRA in certain circumstances, they must be supervisory or managerial employees. *See Vivian v. Madison*, 601 N.W.2d 872, 878 (Iowa 1999) (concluding "a supervisory employee is subject to individual liability for unfair employment practices under [the ICRA]."); *Godfrey v. State*, 898 N.W.2d 844, n.8 (Iowa 2017) ("The [ICRA] allows for individual liability for supervisors...To the extent the individual defendants are not "supervisors" of [the plaintiff], **they are not within the scope of the [ICRA]**...") (citing *Vivian*, 601 N.W.2d at 874) (emphasis added).

## Defendant Raue Was Not Plaintiff's "Supervisor"

16. To qualify as a "supervisor" under the ICRA, an employee must have the ability to "take tangible employment action" against the alleged victim. *Staples v. Delavan Inc.*, 2008 WL 5215130, at *14 (N.D. Iowa Dec. 11, 2008). Consequently, Iowa courts consistently require that an employee is able to hire and/or fire the alleged victim in order to qualify as the victim's

supervisor. *See, e.g.*, *Beattie v. Wells Fargo Bank, N.A*., 2009 WL 10703097, at *5 (S.D. Iowa July 2, 2009) (finding two individual defendants were fraudulently joined under the ICRA, observing "wherever else the limits of individual liability under the ICRA lie, they do not encompass individuals who are not in a position to control a company's hiring decisions"); *Gauthier v. Waterloo Cmty. Sch. Dist*., 2007 WL 611407, at *16 (N.D. Iowa Feb. 23, 2007) (dismissing an individual defendant who did not having hiring or firing authority over the plaintiff); *Nelson v. Wittern Grp., Inc*., 140 F. Supp. 2d 1001, 1009 (S.D. Iowa 2001) ("Before an individual may be found liable under Iowa civil rights law, he or she must be found to have control of the company's hiring decisions.") (citations omitted).

17. Here, Plaintiff's Petition fails to allege facts which, even if true, demonstrate Raue was Plaintiff's supervisor. The Petition simply states in conclusory fashion that Raue worked "in a supervisory role at Whirlpool Corporation, and he was Plaintiff Sherin Easterday's supervisor." Pet. ¶ 3; *see also Monson v. DEA*, 589 F.3d 952, 961 (8th Cir. 2009) (explaining that the court "ignore[s] legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions made in the form of factual allegations" (citation omitted)).

18. To the extent Plaintiff's Petition actually provides detail regarding Raue's and Plaintiff's respective positions, however, it reveals that Raue lacked authority to take any tangible employment action against Plaintiff. Indeed, Plaintiff specifically acknowledges she was hired by the PIC Group (a third-party staffing agency) — not Whirlpool. Pet. ¶ 5. And she admits Raue is an employee of Whirlpool — not the PIC Group. Pet. ¶ 3. Thus, she effectively concedes Raue took no part in her hiring.

19. Further, although Plaintiff claims to have reported to individuals from both the PIC Group and Whirlpool, each time she describes a substantive interaction with a supervisor, it

4

is with a member of the PIC Group. *See, e.g.*, Pet. ¶ 27 (alleging that she reported Raue's purported misconduct to her supervisors from the PIC Group — not Whirlpool); Pet. ¶ 29 (alleging that she reported to her PIC Group supervisor's office to provide a written statement); Pet. ¶ 31 (conceding that she sought and obtained permission from Cathy Noble of the PIC Group before leaving the work site early); Pet. ¶ 32 (conceding that she tendered her resignation to Cathy Noble of the PIC Group).

20. In fact, even the allegations contained in Paragraph 10 of Plaintiff's Petition — allegations which were ostensibly included for the sole purpose of demonstrating Raue was Plaintiff's supervisor — show that Raue lacked any true authority over PIC Group employees:

> Plaintiff witnessed Rick Raue tell her PIC supervisor Noble that he did not want a particular PIC worker working in Building 53 at the North Liberty location and, as a result of Raue's objection, that employee was reassigned to a different location.

Pet. ¶ 10. If Raue were indeed a "supervisor" of the PIC Group employees, as Plaintiff suggests, why would he go through PIC Group supervisor Cathy Noble to have PIC Group employees reassigned to different locations? This allegation plainly exposes that Raue lacked supervisory authority over the PIC Group employees, including Plaintiff.

21. Similarly, in Paragraph 11, Plaintiff concedes that Raue lacked authority to terminate her employment:

> At all times during her employment at the Whirlpool locations, based upon the amount of control that Rick Raue exercised over her work, Plaintiff believed he had the authority to ***recommend her termination*** to her PIC supervisors.

Pet. ¶ 11 (emphasis added). Thus, Plaintiff admits that, at best, she had a *subjective belief* that Raue had the ability to ask Plaintiff's PIC Group supervisors to remove her from the Whirlpool

worksite. This is quite clearly not the same as possessing true termination authority.[2]

22. As detailed above, even taken as true, the allegations contained in Plaintiffs' Petition fail to state a viable ICRA claim against Raue as a matter of law.[3]

23. More importantly, though, Plaintiff's Petition fundamentally misrepresents the nature of Raue's position at Whirlpool. Not only did Raue hold no supervisory authority over the PIC Group employees, Raue is not even a management-level employee of Whirlpool. *See* Declaration of Savanna Nunemaker attached hereto as Exhibit D at ¶¶ 4-10; Declaration of Karen Orvick attached hereto as Exhibit E at ¶¶ 9-11; *see also Block v. Toyota Motor Corp.*, 665 F.3d 944, 948 (8th Cir. 2011) ("In fraudulent joinder cases, some courts examine material beyond the complaint's allegations to determine if there is any factual support for the claims against the allegedly fraudulently joined defendant.") (citations omitted).

24. Raue's official title with Whirlpool was a "Production Specialist." Ex. D at ¶ 4. He was (and remains to this day) an hourly employee without any direct reports. *Id.* ¶¶ 4-10. He has never had the ability to hire, fire, or reassign *anyone* — let alone individuals employed by another organization (i.e., the PIC Group). Ex. D ¶¶ 4-10; Ex. E ¶¶ 4-11.

25. Further, as an independent company that provides contract labor to multiple clients at multiple sites, the PIC Group could choose to reassign its employee to another location at Whirlpool, or to a different client or facility altogether. Ex. E ¶¶ 2-4. Thus, even if Raue (an

---

[2] The ICRA does not provide a cause of action against individuals who are merely in a position to "recommend" a tangible action be taken against an employee. *See, e.g., Erickson-Puttmann v. Gill*, 212 F. Supp. 2d 960, 976 (N.D. Iowa 2002) (stating "individual liability under the ICRA will not lie against a non-supervisory official who exercises no decision making authority over the employment actions effecting (sic) a plaintiff"); *Sahai v. Davies*, 557 N.W.2d 898, 904 (Iowa 1997) (dismissing an ICRA claim against an individual defendant who merely advised an employer to terminate one if its employees).

[3] For this reason, Defendants intend to file a motion to dismiss Raue under Fed. R. Civ. P. 12(b)(6).

6

admitted Whirlpool employee) had some limited input into where a contract employee might be needed at Whirlpool, he had absolutely no input in whether the PIC Group retained an employee or choose to assign that employee to other clients. Ex. D ¶¶ 4-10; Ex. E ¶¶ 4-11.

26. Simply put, Plaintiff's allegations related to Raue's job responsibilities are entirely erroneous and likely only included in an effort to defeat diversity jurisdiction.

27. Accordingly, because Plaintiff's Petition is devoid of any factual allegations showing Raue was Plaintiff's supervisor, Raue's citizenship should be disregarded. Thus, the parties are completely diverse for purposes of jurisdiction.

## Amount in Controversy

28. Although Plaintiff does not plead a specific amount of damages, the amount in controversy claimed by Plaintiff exceeds $75,000.00, exclusive of interest and costs.

29. The standard for determining whether a plaintiff's claim meets the amount in controversy threshold is whether "a fact finder could legally conclude" that the damages the plaintiff allegedly suffered are greater than $75,000. *Feller v. Hartford Life & Acc. Ins. Co.*, 817 F. Supp. 2d 1097, 1107 (S.D. Iowa 2010) (quoting *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002)).

30. Plaintiff's Petition requests past lost wages, future lost wages, lost fringe benefits, emotional distress damages, harm to reputation damages, and attorneys' fees. Pet. ¶ 4.[4]

31. Plaintiff makes no specific monetary demand in her Petition, but that does not affect the propriety of Defendants' removal. "When the face of the state-court pleading does not reveal that removal is proper, the removing party may set forth facts in the removal notice that

---

[4] Plaintiff designates two paragraphs in her Petition as Paragraph "4." Her prayer for relief is contained in the second Paragraph 4 on pages 8-9 of Plaintiff's Petition.

7

support a finding of the requisite amount." *Patterson v. Menard, Inc.*, 2015 WL 12762272, at *3 (S.D. Iowa Dec. 22, 2015).

32. Defendants lack precise information concerning Plaintiff's wages considering she was an employee of the PIC Group. However, even assuming Plaintiff earned just minimum wage (i.e., $7.25/hour) while working at the PIC Group, her alleged back-pay damages alone could conceivably amount to $50,170.00 by the trial date.[5]

33. Moreover, Courts consider compensatory damages in determining whether the amount in controversy exceeds $75,000.00. *See, e.g.*, *Wiemers v. Good Samaritan Soc'y*, 212 F. Supp. 2d 1042, 1048 (N.D. Iowa 2002) (taking into account a plaintiff's demand for emotional distress damages in assessing the amount in controversy); *Clark v. Matthews Int'l Corp.*, 639 F.3d 391, 397 (8th Cir. 2011) (same).

34. The ICRA contains no cap for emotional distress damages. *See Channon v. United Parcel Serv., Inc.*, 629 N.W.2d 835, 851 (Iowa 2001). Consequently, jury verdicts received by prevailing plaintiffs in ICRA claims often greatly exceed $75,000.00:

- *Kristen Anderson v. the State of Iowa, et al.* Case No. 05771-LACL-131321 (Dist. Ct. of Polk Cnty., Ia. 2017) (awarding $2,195,000.00 in emotional distress damages for sexual harassment and retaliation claim under the ICRA).

- *Rennenger v. Toyquest LTD, et al.*; Case o. 10-cv-00400 (S.D. Iowa 2015) (awarding $1,800,000 in emotional distress damages and $82,727 in lost wage damages).

- *Glister v. Primebank, Inc., et al.*; Case No. 10-cv-04084 (N.D. Iowa 2012) (awarding $240,000 in emotional distress damages in a sexual harassment case).

---

[5] This figure assumes 40-hour workweeks from September 18, 2016 (Plaintiff's alleged last day working for the PIC Group) through January 15, 2020 (an approximate trial date of one year from the filing of Plaintiff's Petition). This lost wage figure is conservative as it does not account for the front-pay damages sought by Plaintiff in her Petition.

8

- *Hurkin v. Woodward Resource Center, et al.*; Case No. 05771-LACL-120384 (Dist. Ct. of Polk Cnty., Ia. 2012) (awarding $140,138 in lost earnings and $200,000 in emotional distress damages for a discrimination claim under the ICRA).

- *Debi Erwine v. UGL Services Unicco Operations Co., et al.*; Case No. LALA003532 (Dist. Ct. of Monroe Cnty., Ia. 2011) (awarding $140,289.94 in lost earnings and $400,000 in emotional distress damages for discrimination claims under the ICRA).

- *Channon v. United Parcel Serv., Inc.*, 629 N.W.2d 835 (Iowa 2001) (affirming an award of $300,000 of compensatory damages for an ICRA claim from in the District Court of Polk County).

35. Thus, Plaintiff's claimed damages for past/future "emotional distress and mental anguish" and past/future "harm to reputation" could potentially greatly exceed the $75,000.00 statutory requirement. *See* Pet. ¶ 4.

36. Finally, the ICRA allows for the recovery of attorneys' fees and costs by a prevailing plaintiff. Iowa Code § 216.15(8)(a)(8). Again, an award of attorneys' fees and costs stands to exceed the jurisdictional threshold on its own. *See, e.g.*, *Hurkin v. Woodward Resource Center, et al.*; Case No. 05771-LACL-120384 (Dist. Ct. of Polk Cnty., Ia. 2012) (awarding $140,634 in attorneys' fees to the prevailing plaintiff); *see also Feller*, 817 F. Supp. 2d at 1107 ("[T]his Court finds that it is rational to include the future legal expenses in calculating the amount in controversy").

37. Thus, given the wide-ranging damages sought in Plaintiff's prayer for relief, it is clear that a "fact finder could reasonably conclude" her damages exceed $75,000.00. *Feller*, 817 F. Supp. 2d at 1107.

## Conclusion

38. As noted in the paragraphs above, Defendants have properly removed this case to federal court pursuant to 28 U.S.C. § 1441 because all of the parties are diverse and the amount in controversy exceeds $75,000.00.

39. Under §§ 1332, 1441(a) and 1446(a), and Local Rule 81(a), the United States District Court for the Northern District of Iowa, Cedar Rapids Division, is the appropriate court for removing an action from the Iowa District Court in and for Linn County, where this action was filed.

40. Promptly upon filing this Notice of Removal, Defendants shall give notice in writing to all parties and shall file a copy of this Notice of Removal with the Clerk of the Iowa District Court in and for Linn County

WHEREFORE, Defendants give notice that this action is removed from the Iowa District Court in and for Linn County, to the United States District Court for the Northern District of Iowa, Cedar Rapids Division.

Respectfully submitted,

/s/ Thomas D. Wolle
Thomas D. Wolle  AT0008564
Simmons Perrine Moyer Bergman PLC
115 3rd Street SE, Ste. 1200
Cedar Rapids, Iowa 52401
Telephone:      319-366-7641
Facsimile:       319-366-1917
twolle@simmonsperrine.com

Nikki Hininger Howell*
John F. Doyle*
Constangy, Brooks & Smith & Prophete, LLP
2600 Grand Blvd., Suite 750
Kansas City, MO 64108
Telephone:      816-329-5932
Facsimile:       816-256-5526
nhowell@constangy.com
jfdoyle@constangy.com

* *Pro Hac Vice* Application Forthcoming

Attorneys for Defendants

10

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following counsel of record:

Marc A. Humphrey
Humphrey Law Firm, P.C.
300 Walnut Street, Suite 5
Des Moines, IA 50309
Telephone: (515) 331-3510
Facsimile: (515) 282-0318
Email: mhumphrey@humphreylaw.com

*Attorney for Plaintiff*

*/s/* Thomas D. Wolle
An Attorney for Defendants